**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---------------------------------------------------------- x

NATIONAL ASSOCIATION OF THEATRE
OWNERS; NATIONAL ASSOCIATION OF
THEATRE OWNERS OF NEW JERSEY;
AMERICAN MULTI-CINEMA, INC.;
CINEMARK USA, INC.; REGAL CINEMAS,
INC.; BJK ENTERTAINMENT INC.; BOW TIE
CINEMAS, LLC; and COMMUNITY
THEATERS LLC,

                         Plaintiffs,

              - against -

PHILIP D. MURPHY, in his official capacity as
Governor of New Jersey; and JUDITH
PERSICHILLI, in her official capacity as Acting
Commissioner of Health of New Jersey,

                         Defendants.

---------------------------------------------------------- x

Case No.

 

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

DAVIS WRIGHT TREMAINE LLP
Geoffrey S. Brounell (member of the New Jersey bar)
Robert Corn-Revere (*pro hac vice* application forthcoming)
Janet Grumer (*pro hac vice* application forthcoming)
Martin L. Fineman (*pro hac vice* application forthcoming)
John D. Freed (*pro hac vice* application forthcoming)
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Tel:  (212) 489-8230
geoffreybrounell@dwt.com
bobcornrevere@dwt.com
janetgrumer@dwt.com
martinfineman@dwt.com
jakefreed@dwt.com

Attorneys for Plaintiffs National Association of Theatre Owners, National Association of Theatre
Owners of New Jersey, American Multi-Cinema, Inc., Cinemark USA, Inc., Regal Cinemas,
Inc., BJK Entertainment Inc., Bow Tie Cinemas, LLC and Community Theaters LLC

Plaintiffs National Association of Theatre Owners ("NATO"), National Association of

Theatre Owners of New Jersey ("NATO NJ"), American Multi-Cinema, Inc. ("AMC"),

Cinemark USA, Inc. ("Cinemark"), Regal Cinemas, Inc. ("Regal"), BJK Entertainment Inc.

("BJK"), Bow Tie Cinemas, LLC ("Bow Tie"), and Community Theaters LLC ("Community

Theaters") (collectively, "Plaintiffs"), for their Complaint against Defendants Governor Philip D.

Murphy ("Governor"), and Acting Commissioner of Health of New Jersey Judith Persichilli

("Commissioner") (collectively, "Defendants"), allege as follows:

## SUMMARY OF THE COMPLAINT

1.       By this Complaint, Plaintiffs challenge Defendants' unconstitutional and unlawful

distinctions in allowing certain places of public assembly to reopen, while requiring movie

theatres to remain closed.  COVID-19 represents a serious public health risk, and Plaintiffs

support fair and reasonable actions by the government to address that risk.  However, the

government-mandated total closure of movie theatres is neither fair nor reasonable, and is instead

a violation of Plaintiffs' First Amendment rights of freedom of speech and freedom of

expression, Equal Protection of the laws, Due Process under the law, and is a Taking of property

without just compensation.

2.       Defendants have allowed various sectors of the New Jersey economy to reopen

following Governor Murphy's March 16, 2020 Executive Order No. 104, which closed various

"non-essential" businesses, including movie theatres, in response to the COVID-19 virus.  On

April 27, 2020, the Governor issued a reopening roadmap, entitled "The Road Back:  Restoring

Economic Health Through Public Health," articulating various public health principles to guide

New Jersey's reopening efforts.[1]  Then, on May 18, 2020, the Governor issued another roadmap,

---

[1] https://d31hzlhk6di2h5.cloudfront.net/20200427/db/2d/77/6c/2a8a498ff2edda855c3f456d/The_Road_Back_-_Restoring_Economic_Health_Through_Public_Health.pdf

1

establishing a series of reopening "stages," starting with what it labeled low-risk activities and advancing toward higher-risk activities.[2]  Movie theatres were placed in Stage 3, which includes "limited entertainment."

3.      The plan has completed Stage 1, and entered Stage 2 on June 15, 2020.  On June 19, 2020, New Jersey announced the reopening of retail stores, and set June 29, 2020 as the date for reopening indoor shopping malls.[3]  This announcement, however, specified that "[i]ndoor entertainment businesses, such as movie theaters and arcades, will remain closed."  Defendants provided no timeline for the commencement of Stage 3, or for the reopening of movie theatres.

4.      Earlier in June 2020, Defendants reopened places of worship.  Places of worship were first allowed to reopen on June 13, 2020.  On June 22, 2020, Governor Murphy issued Executive Order 156,[4] which permits religious indoor gatherings of up to 100 people (or 25% capacity, whichever is lower), subject to face covering and social distancing requirements.  At the same time, Defendants announced that "[o]utdoor religious services are exempt from the limit on outdoor gatherings and can exceed the normal capacity of 250 people."[5]

5.      On June 26, 2020, the Governor issued Executive Order 157, which allows certain businesses to reopen on July 2, 2020.  Among the businesses allowed to reopen by this order are a number of public assembly establishments such as libraries, museums, aquariums, and public and private social clubs.  The order uses the rubric "recreational and entertainment businesses,"

---

[2] http://d31hzlhk6di2h5.cloudfront.net/20200518/ff/c9/8c/41/1917eaf623c02595b9225209/Strategic_Restart_Plan.jpg ; https://www.nj.gov/governor/news/news/562020/20200518a.shtml
[3] https://covid19.nj.gov/faqs/nj-information/general-public/can-retail-stores-and-malls-reopen-what-are-the-social-distancing-requirements-at-retail-businesses-for-customers-employees-and-business-owners#direct-link
[4] http://d31hzlhk6di2h5.cloudfront.net/20200622/29/da/2b/70/2f1b949933a4c38d71a1f973/EO-156.pdf
[5] https://covid19.nj.gov/faqs/nj-information/general-public/are-churches-and-other-houses-of-worship-offering-services-what-are-the-social-distancing-requirements

yet specifically requires movie theatres, performing arts centers, gyms and fitness centers, and indoor amusement and water parks to keep their indoor spaces closed.

6.       Defendants have a legal obligation to promulgate orders that treat like entities in a like manner, and not to create arbitrary or irrational distinctions, particularly where First Amendment rights are at stake.  Although Defendants have issued orders allowing other public assemblies such as religious services and ceremonies to open, they have withheld approval for movie theatres, which are similarly situated, if not less of a risk, from a public health perspective. Representatives of Plaintiffs met with representatives of Defendants, and the representatives of Plaintiffs shared detailed safety protocols that would be implemented for the reopening of movie theatres in the State that Plaintiffs are ready, willing, and able to implement.  The protocols proposed by Plaintiffs comprehensively address all aspects of theatre operations, including employees, patrons, ticket sales, concessions sales, seating, security, training, and other elements of health and safety.  Nevertheless, Defendants' orders continue to require all indoor movie theatres in New Jersey to remain closed.  Defendants have provided no explanation for their disparate treatment of entities with similar risk levels regarding COVID-19, and none exists.

7.       NATO, NATO NJ, AMC, Cinemark, Regal, BJK, Bow Tie, and Community Theaters support the necessary work of public health officials in promoting the health and safety of New Jersey residents, and of taking responsible measures to reduce the risk of transmission of the novel coronavirus.  The law, though, must be applied fairly and equally to all subject persons and entities.  Plaintiffs do not seek to insulate movie theatres from the general public health guidelines issued by the State.  To the contrary, Plaintiffs support those guidelines and AMC, Cinemark, Regal, BJK, Bow Tie, and Community Theaters and the members of NATO and NATO NJ will follow those guidelines when they reopen.

4816-5471-1489v.3 0115974-000002

8.      Plaintiffs bring this action to ensure that movie theatre are treated equally with other similarly situated places of public assembly, and in order to exercise their First Amendment rights to exhibit films of significant artistic, cultural, political and popular merit. Plaintiffs seek a temporary restraining order, preliminary injunction, permanent injunction, and declaratory relief to protect those rights.

## THE PARTIES

9.      Plaintiff National Organization of Theatre Owners ("NATO") is a non-profit organization organized and existing under the laws of the State of New York and is authorized to do business, and is doing business, in the State of New Jersey and in this Judicial District. NATO represents its voluntary members, who are movie theatre owners throughout the United States and abroad, which are affected by and subject to the Governor's orders discussed herein. NATO is the largest film exhibition trade organization in the world, representing over 35,000 movie screens in all fifty states, as well as additional cinemas in 98 countries worldwide. NATO's mission is to unite for the mutual benefit, protection, and improvement of the theatrical and entertainment industry, addressing issues such as new technologies, legislation, marketing, movie theft, and First Amendment issues.  NATO has both associational and organizational standing to bring and maintain this action.  One or more of NATO members would have standing to sue in its/their own right, and the interests that NATO seeks to protect are germane to NATO's purpose.

10.      Plaintiff National Organization of Theatre Owners of New Jersey ("NATO NJ") is a non-profit organization organized and existing under the laws of the State of New Jersey and is authorized to do business, and is doing business, in the State of New Jersey and in this Judicial District.  NATO NJ represents its voluntary members, who are movie theatre owners, operators, executives, and managers in New Jersey, and which are affected by and subject to the

4

Governor's orders discussed herein.  NATO NJ's purpose is to provide its members with vocational advice, professional guidance, and to further promote the welfare of New Jersey's movie theatres.  NATO NJ carries out its mission by, among other things, working on behalf of New Jersey motion picture exhibitors on state and local governmental issues affecting movie theatres; providing educational workshops; and offering financial support to its many student-employees and children of employees interested in further education.  NATO NJ has both associational and organizational standing to bring and maintain this action.  One or more of NATO NJ's members would have standing to sue in its/their own right, and the interests that NJ seeks to protect are germane to NATO NJ's purpose.

11.     Plaintiff American Multi-Cinema, Inc. ("AMC") is a corporation organized and existing under the laws of the State of Missouri and is authorized to do business, and is doing business, in the State of New Jersey and in this Judicial District.  AMC owns and operates movie theatres in the State of New Jersey, specifically, AMC Brick Plaza 10 (in Brick), AMC DINE-IN Bridgewater 7, AMC Cherry Hill 24, AMC Clifton Commons 16 (in Clifton), AMC Deptford 8, AMC Brunswick Square 13 (in East Brunswick), AMC East Hanover 12, AMC Monmouth Mall 15 (in Eatontown), AMC DINE-IN Menlo Park 12 (in Edison), AMC Jersey Gardens 20 (in Elizabeth), AMC Freehold 14, AMC DINE-IN Shops at Riverside 9 (in Hackensack), AMC Hamilton 24, AMC Newport Centre 11 (in Jersey City), AMC Aviation 12 (in Linden), AMC Marlton 8, AMC Headquarters Plaza 10 (in Morristown), AMC Mountainside 10, AMC New Brunswick 18, AMC Garden State 16 (in Paramus), AMC MarketFair 10 (in Princeton), AMC Ridgefield Park 12, AMC Rockaway 16, AMC Seacourt 10 (in Toms River), AMC Vorhees 16, AMC Wayne 14, and AMC DINE-IN Essex Green 9 (in West Orange).  AMC is a member of NATO NJ and NATO.

12.     Plaintiff Cinemark USA, Inc. ("Cinemark") is a corporation organized and existing under the laws of the State of Texas and is authorized to do business, and is doing business, in the State of New Jersey and in this Judicial District.  Cinemark owns and operates movie theatres in the State of New Jersey, specifically, Cinemark Hazlet 12, Cinemark 16 and HD (in Somerdale), Cinemark Wachtung and XD, and Cinemark Willowbrook Mall and XD (in Wayne).  Cinemark is a member of NATO NJ and NATO.

13.     Plaintiff Regal Cinemas, Inc. ("Regal") is a corporation organized and existing under the laws of the State of Tennessee and is authorized to do business, and is doing business, in the State of New Jersey and in this Judicial District.  Regal owns and operates movie theatres in the State of New Jersey, specifically, Regal Burlington, Regal Commerce Center & RPX (in North Brunswick), Regal Cross Keys (in Turnersville), Regal Cumberland Mall (in Vineland), Regal Hadley Theatre (in South Plainfield), Regal Hamilton Commons (in Mays Landing), Regal Independence (in Hamilton Township), Regal Manahawkin, Regal Moorestown Mall & RPX (in Moorestown), Regal Pohatcong (in Phillipsburg), and Regal UA Washington Township (in Sewell).  Regal is a member of NATO NJ and NATO.

14.     BJK Entertainment Inc. ("BJK") is a corporation organized and existing under the laws of the State of New Jersey and is authorized to do business, and is doing business, in the State of New Jersey and in this Judicial District.  BJK owns and operates a movie theatre in the State of New Jersey, specifically, Hillsborough Cinema.  BJK is a member of NATO NJ and NATO.

15.     Bow Tie Cinemas, LLC ("Bow Tie") is a limited liability corporation organized and existing under the laws of the State of Delaware and is authorized to do business, and is doing business, in the State of New Jersey and in this Judicial District.  Bow Tie owns or

operates movie theatres in the State of New Jersey, specifically, Caldwell Cinemas, Hoboken Cinemas, Millburn Cinemas, South Orange Cinemas, and Warner Theater (in Ridgewood).  Bow Tie is a member of NATO NJ and NATO.

16.     Community Theaters LLC ("Community Theaters") is a limited liability corporation organized and existing under the laws of the State of New Jersey and is authorized to do business, and is doing business, in the State of New Jersey and in this Judicial District. Community Theaters owns and operates a movie theatre in the State of New Jersey, specifically, Fabian 8 (in Paterson).  Community Theaters is a member of NATO NJ and NATO.

17.     Defendant Philip D. Murphy is a party to this action in his official capacity as Governor of the State of New Jersey.

18.     Defendant Judith Persichilli is a party to this action in her official capacity as New Jersey Acting Commissioner of Health.  On information and belief, the Commissioner has participated in the issuance and enforcement of the orders challenged in this lawsuit.

## JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction over the claims asserted in this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331 because this action arises under the First Amendment to the United States Constitution, the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and the Takings Clause of the Fifth Amendment to the United States Constitution.

20.     Jurisdiction also exists in this Court pursuant to 28 U.S.C. § 1343(a)(3) and (4) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution, and to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

7

21.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims asserted under New Jersey's Constitution, statutes, and regulations because Plaintiffs' state constitutional claims are so related to its federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

22.     The District of New Jersey is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is a District in which Defendants maintain offices, exercise their authority in their official capacities, and have enforced the orders at issue in this case.

23.     There is a present and actual controversy between the parties.

24.     The relief requested is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 (declaratory judgment), 28 U.S.C. § 1651(a) (injunctive relief), 42 U.S.C. § 1983, and 42 U.S.C. § 1988 (right to costs, including attorneys' fees).

## FACTUAL ALLEGATIONS

### A.     The COVID-19 Outbreak and the Movie Theatre Business

25.     AMC, Cinemark, Regal, BJK, Bow Tie, and Community Theaters, and the members of NATO NJ and NATO are movie theatre owners and operators who exhibit to the public films of significant artistic, cultural, popular, and political merit.

26.     New Jersey has been affected by the global outbreak of COVID-19.

27.     On March 16, 2020, the Governor issued Executive Order No. 104, directing, among other things, New Jersey residents to stay at home except as required to maintain continuity of operations for certain essential services.

28.     As a result, since March 16, 2020, large sectors of New Jersey's economy have been brought to a standstill, including the State's entire movie theatre industry.  By Defendants' orders, movie theatres have been ordered to remain closed and remain under such orders.  As a

8

result, movie theatres have been unable to exhibit, and the public has been unable to view, any films that were slated to be released since March 16, 2020.

29.     Movie theatres, including those that are members of NATO NJ and NATO and those owned and operated by AMC, Cinemark, Regal, BJK, Bow Tie, and Community Theaters have been and will be prevented by the Roadmap and the Plan from presenting films of significant artistic, cultural, political, and popular merit.  Movie theatres have suffered and continue to suffer significant loss of income, loss of profits, and have had to lay off, furlough or reduce the hours of employees.

**B.      The Governor Issues Orders Establishing Disparate Treatment of Like Places of Public Assembly**

30.     On May 18, 2020, the Governor issued a reopening roadmap, articulating a series of reopening "stages," starting with activities that Defendants deem to be low-risk and advancing toward activities that Defendants deemed to be higher-risk..  Movie theatres have been placed by Defendants in "Stage 3," which includes "limited entertainment."  New Jersey is currently in "Stage 2."  Guidance from the Governor's office dated June 19, 2020 provides that "[i]ndoor entertainment businesses, such as movie theaters and arcades, will remain closed."  The State provided no timeline for the commencement of Stage 3, or for the reopening of movie theatres.

31.     On June 26, 2020, the Governor Issued Executive Order No. 157, ordering movie theatres to stay closed "because there are an especially high number of available outdoor and virtual options for members to the public to view and listen to movies…"[6]  This justification is irrational and unreasonable, as the types of activities occurring in places of assembly that have been allowed to reopen also may be done outdoors or virtually.  For example, prayer can be done outdoors or virtually, while places of worship have been allowed to reopen; reading can be done

---

[6] https://nj.gov/infobank/eo/056murphy/pdf/EO-157.pdf

outdoors or virtually, while libraries have been allowed to reopen; shopping can be done outdoors or virtually, while shopping malls have been allowed to reopen. Furthermore, the Governor's ostensible justification is not factually correct. Given the closure of movie theatres in key markets such as New Jersey, many films have not been released virtually or have been delayed for theatrical release by distributors. Defendants' orders are plainly preventing Plaintiffs' speech and expression.

32. Notwithstanding Defendants' unlawful and highly restrictive treatment of movie theatres, Defendants have allowed similarly-situated places of public assembly to reopen. For example, Defendants allowed places of worship to reopen on June 13, 2020. Then, on June 22, 2020, the Governor issued Executive Order 156,[7] which permits religious indoor gatherings limited to 100 people (or 25% of capacity, whichever is lower), subject to face covering and social distancing requirements. At the same time, the State announced that "[o]utdoor religious services are exempt from the limit on outdoor gatherings and can exceed the normal capacity of 250 people."[8]

33. There is no rational basis for Defendants' distinction between, for example, places of worship and movie theatres for purposes of reopening, yet Defendants have allowed places of worship to reopen while movie theatres must remain closed, with no scheduled date for reopening.

34. As Chief Justice Roberts stated in *South Bay Pentecostal Church v. Newsom*, No. 19A1044, 590 U.S. ___ (May 29, 2020), "movie showings" are "comparable secular gatherings" to religious services, in that "large groups of people gather in close proximity for

---

[7] http://d31hzlhk6di2h5.cloudfront.net/20200622/29/da/2b/70/2f1b949933a4c38d71a1f973/EO-156.pdf
[8] https://covid19.nj.gov/faqs/nj-information/general-public/are-churches-and-other-houses-of-worship-offering-services-what-are-the-social-distancing-requirements

extended periods of time."  In *South Bay Pentecostal*, the Supreme Court held that comparable treatment of places of worship and movie theatres in connection with reopening was consistent with the Free Exercise Clause of the First Amendment.

35.     The federal Centers for Disease Control and Prevention ("CDC") treats the following "Large Venues" together for purposes of reopening:  "sit-down dining, movie theaters, sporting venues, places of worship."[9]  The CDC recommends that such venues collectively be permitted to reopen, subject to social distancing requirements, as soon as any individual state or region meets certain gating criteria.  Notwithstanding the CDC's view that movie theatres and places of worship represent comparable risk levels, Defendants have already permitted reopening of places of worship, yet has not even set a timetable for reopening of movie theatres.

36.     The Johns Hopkins University Center for Health Security ("CHS") has issued a document entitled "Public Health Principles for a Phased Reopening During COVID-19: Guidance for Governors."[10]  This guidance indicates that places of worship present a *greater* public health risk relating to COVID-19 than "theaters, museums, and other indoor leisure spaces."  CHS explains that the latter category, which includes movie theatres, has ***medium*** "contact intensity," defined as a "function of contact type (ranging from close to distant) and duration (ranging from brief to prolonged)."  In contrast, places of worship have a ***high*** contact intensity.  Both categories are identical in terms of "number of contacts" and "modification potential" (*i.e.*, "the degree to which mitigation measures can buy down [COVID-19] risks").  Other public health experts have similarly rated places of worship as more risky than movie theatres, highlighting the increased risks posed by singing in places of worship.  Unlike attendees

---

[9] https://www.whitehouse.gov/openingamerica/
[10] https://www.centerforhealthsecurity.org/our-work/pubs_archive/pubs-pdfs/2020/200417-reopening-guidance-governors.pdf

4816-5471-1489v.3 0115974-000002

at places of worship, movie theatre guests generally do not engage with those outside their immediate groups to have conversations, hold or shake hands, hug, sing, provide verbal responses, do responsive readings, or engage in other forms of contact regularly engaged in at places of worship.[11]  Indeed, speaking and singing during the performance is not allowed in movie theatres.  Nor are there shared books or documents or frequent sitting, standing and kneeling in movie theatres.

37.     Studies of consumer psychology show that consumers look to the pronouncement of government officials to evaluate the safety of certain activities.  For example, one survey shows that 78% of consumers would require safety assurances from the local health department before feeling comfortable to visit a movie theatre in light of COVID-19[12].  Accordingly, the treatment of a given activity by government authorities has a strong influence on consumer beliefs about the relative safety of an activity.  Where, as here, the government has arbitrarily and unreasonably treated movie theatres as if more risky than places of worship, consumers are likely to conclude that movie theatres are, in fact, more risky.  The government thus conveys that movie theatre attendance is a more dangerous activity without any empirical basis.  The result of this disparate treatment is that consumers will continue to avoid movie theatres, even if theatres have adopted safety protocols rendering them equally safe—or even safer—than comparable public gathering places.

38.     There is no rational basis for the distinction Defendants have drawn, for example, between places of worship and movie theatres, both places of public assembly.  In fact, many churches lacking a building of their own, or lacking the capability to safely host religious

---

[11] https://www.mlive.com/public-interest/2020/06/from-hair-salons-to-gyms-experts-rank-36-activities-by-coronavirus-risk-level.html?outputType=amp
[12] "America Approaches An Inflection Point," at p.13, available at www.engagious.com.

4816-5471-1489v.3 0115974-000002

services during this period, hold their religious services in movie theatres.  An example is Plaintiff Cinemark's Cinemark Theatre Church program[13].  Under Defendants' orders, a movie theatre could host religious services on Sunday morning but would have to close showing movies on Sunday afternoon to an audience of the same size in the same auditorium following the same distancing requirements.  As another example, a church group could watch a religiously-themed movie in a movie theatre as part of its religious ceremonies but the same theatre cannot show the same film to a general audience of the same size that same day in the same auditorium and following the same distancing requirements.

39.     The impact of Defendants' orders, coupled with the Defendants' purported justification for the closure of movie theatres (that there are other and virtual ways to watch movies), shows Defendants' overt hostility to movie theatres' speech and expression, as compared to other forms of speech and expression.

40.     In line with the empirical data, most states have already allowed opened movie theatres, or are planning to do so substantially before movie theatres can reopen in New Jersey. At least thirty-five states plus Puerto Rico have already allowed movie theatres to reopen on a state-wide basis.  An additional eight states plus the District of Columbia have allowed movie theatres to reopen based on a county or regional basis or with approval from the health department.  An additional state is allowing movie theatres to reopen by July 31, 2020.  One state has created a plan to allow movie theatres to reopen but has not announced a date.  Thus, Plaintiffs estimate that movie theatres will be allowed to open in at least forty-five states plus the District of Columbia and Puerto Rico by July 31, 2020.

---

[13]https://www.cinemark.com/private-events/theatre-church/

4816-5471-1489v.3 0115974-000002

41.      Representatives of Plaintiffs have met with representatives of Defendants, and representatives of Plaintiffs have presented detailed, comprehensive safety plans for the reopening of movie theatres in New Jersey that Plaintiffs are ready, willing, and able to implement.  The proposed protocols meticulously address all aspects of theatre operations, including employees, patrons, ticket sales, concessions sales, seating, security, training, and other elements of health and safety.  Those protocols include:

As to Employees:

- Masks and gloves required for all employees;

- Each employee to sign a document or otherwise certify each day upon the beginning of the shift that the employee does not have any symptoms associated with COVID-19 and that the employee does not have a fever;

- Each employee will be monitored regularly during the period the theatre is open, and any employee that becomes sick will immediately be sent home;

- Employees will be required to maintain social distancing in the workplace;

- All public spaces, restrooms, and food preparation areas will be cleaned, sanitized, and disinfected, in accordance with state and municipal department of health guidelines, NATO reopening operations resources, CDC COVID-19 reopening guidance, FDA Food Safety During Emergencies guidance, and OSHA Publication 3990, Guidance on Preparing Workplaces for COVID-19;

- Relevant areas and surfaces will receive continual cleaning during the hours the theatre is open and after closing;

- Employee break times will be staggered, and staff will maintain social distancing during breaks;

14

- Any hiring will be conditioned on applicants signing a written certification that the potential employee has been symptom-free for 14 days prior to start date;

- Training will be provided to all employees on all COVID-19 policies prior to reopening and again when updates or changes are to be implemented;

As to Patrons:

- All patrons must wear masks;

- Seating patterns will be established to achieve social distancing;

- Ticketing, concessions, restroom, auditorium entrance, and other lines will maintain social distancing;

- Signs will be posted to indicate the social distancing and other safety rules;

As to Ticket Sales:

- Ticket sales will be limited to comply with any state guidance limiting the occupancy of any auditorium or theatre venue;

- Touchless purchasing technology will be employed to the extent possible;

- For theatres lacking touchless capability, tickets will be purchased at designated locations where the employee and the patron will not have any physical contact and will maintain proper social distance;

- Plexiglas partitions will be employed at all customer service areas;

- Lines will be marked with measured six-foot increments, to maintain proper social distancing, and patrons will be required to adhere to that spacing while waiting to conduct any transactions;

4816-5471-1489v.3 0115974-000002

As to Concessions Sales:

- Queue lines will maintain physical distancing standards, patrons and employees will wear masks, and food service workers will wear gloves;

- Where possible, "apps" enabling pre-purchase of concessions will be employed and purchases will be delivered to patrons' seats, thus avoiding queue lines;

- Plexiglas contact partitions will be employed at all concessions areas;

- Staff will maintain standards of sanitization at all self-service and courtesy areas and other contact points;

As to Seating:

- Seating patterns will be arranged to maintain social distancing between households on all sides;

- Reserved seating ticketing systems will be updated to require empty seats on either side of a household's ticket purchase;

- If a theatre does not have a reserved seating policy, an usher or theatre manager will direct compliance with seating rules and monitor guests at routine intervals in order to maintain proper social distancing;

- Auditoriums will be cleaned between shows;

As to Security:

- Seating patterns will be arranged to maintain social distancing between households;

- Reserved seating ticketing systems will be updated, as described;

- Auditoriums will be cleaned between shows;

As to Training:

- All employees will be properly trained on safety and sanitizing procedures;

16

- Signs and placards will be placed in appropriate public areas reminding staff and patrons to adhere to safety policies, and proper markings on floors will be installed to assist in maintaining mandated physical distance levels;

- Signs will be posted outlining the policies and warning that. if not followed, the patron will be asked to leave the theatre;

- All safety policies will be posted on the theatre's website;

Other Health Precautions:

- Showtimes will be staggered to ensure capacity is controlled and sufficient time is allotted for entry and exit as well as cleaning the theatres;

- Additional hand sanitizer stations will be located throughout facilities;

- Facility HVAC system air exchangers will be calibrated to maximize replacement of indoor air with fresh air;

- Independent theatres with smaller lobby areas and other limited space and limited technology will make every effort to adhere to the guidelines outlined above; and

- Theatres and patrons will be required to follow all CDC Coronavirus Prevention Guidelines, New Jersey Department of Health requirements, and all social distancing requirements established by the Governor in the delivery of these services.

Rather than address these comprehensive safety proposals in any meaningful way, Defendants have chosen to continue to discriminate against movie theatres and to continue to require the closure of indoor movie theatres. The ostensible reason offered by Defendants is that there are other and virtual ways to watch movies. Defendants have not applied this rationale to the other places of public assembly that Defendants have permitted to reopen.

42.     Plaintiffs understand Defendants' goal of protecting the health and safety of New Jersey residents and mitigating the risk of the spread of COVID-19.  But having concluded that it is in the interests and welfare of New Jersey residents to permit the reopening of businesses, Defendants must apply the law to similar entities and activities in a similar fashion.  Defendants violate the guarantee of equal treatment under the law by refusing to permit movie theatres to reopen, while other similar entities have been allowed to reopen.

43.     Movie theatres continue to suffer a total loss of revenue and profits due to Defendants' shutdown orders.  These losses increase each day and will continue to rise as summer 2020 progresses.  The movie exhibition industry is heavily dependent upon the summer movie-going season.  As a result of the ongoing forced closures, movie theatres are suffering considerable and ongoing harm, including injuries to their businesses, reputations, and relationships with customers, vendors, and employees.  Defendants have not provided for or offered compensation to the State's movie theatres in exchange for the regulatory taking of their properties.

44.     In addition to financial loss, Defendants' continued orders keeping movie theatres closed infringe significantly on Plaintiffs' rights of free speech and expression.  AMC, Cinemark, Regal, BJK, Bow Tie, Community Theaters, and the members of NATO NJ and NATO are prevented by Defendants' orders from showing films to members of the public.

45.     Movie theatre owners are ready, willing and able to comply with any and all requirements for reopening promulgated by Defendants for comparable enterprises, such as places of worship.  In fact, NATO has proposed to Defendants a set of guidelines more comprehensive and demanding than those promulgated by New Jersey for other similarly-

situated places of public assembly, such as places of worship[14].  In addition, theatres are able to stagger show starting times, implement no-contact methods of purchasing tickets and concessions, and ensure physical distancing requirements in auditoriums.

## FIRST CLAIM FOR RELIEF

### (Violation of the Equal Protection Clause of the Fourteenth Amendment)

46.     Plaintiffs incorporate by reference and reallege each and every allegation in Paragraphs 1 through 45, as if fully set forth herein.

47.     "When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'"  *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 601 (2008).

48.     Where the classification impinges on fundamental rights, including those protected by the First Amendment or the right to Due Process, the differential treatment is subjected to strict scrutiny under the Equal Protection Clause.  *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).  As described more fully below, Defendants have violated Plaintiffs' (including NATO NJ and NATO's members') First Amendment and Due Process rights under the Fourteenth Amendment; thus the orders closing movie theatres are subject to strict scrutiny.  The orders cannot satisfy strict scrutiny because the distinction between places of worship and other places of public assembly versus movie theatres is arbitrary, and not narrowly tailored to further compelling government interests.

---

[14] https://covid19.nj.gov/faqs/nj-information/general-public/are-churches-and-other-houses-of-worship-offering-services-what-are-the-social-distancing-requirements (churches free to reopen with only general restrictions as to capacity, social distancing, and face covering).

49.     Defendants' orders cannot survive any level of scrutiny.  The orders distinguish between places of worship and other places of public assembly versus movie theatres without any rational reason and thus cannot satisfy even rational basis review.

50.     Accordingly, AMC, Cinemark, Regal, BJK, Bow Tie, Community Theaters, and NATO NJ and NATO, on behalf of their respective members, seek a declaration that Defendants' orders violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

51.     AMC, Cinemark, Regal, BJK, Bow Tie, Community Theaters, and NATO NJ and NATO, both directly and on behalf of their respective members, have no adequate remedy at law and will suffer serious and irreparable harm unless Defendants are enjoined from implementing and enforcing the orders, to the extent they allow places of worship or other comparable places of public assembly to open before movie theatres.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CLAIM FOR RELIEF

### (Violation of Freedom of Speech and Expression under the First Amendment)

52.     Plaintiffs incorporate by reference and reallege each and every allegation in Paragraphs 1 through 51, as if fully set forth herein.

53.     The First Amendment to the United States Constitution guarantees that "Congress shall make no law … abridging the freedom of speech..."  The First Amendment also applies to the States, including New Jersey, and their officials.

54.     The orders challenged herein abridge Plaintiffs' freedom of speech and expression by preventing the exhibition of movies of significant artistic, cultural, popular, and political merit.  As to movies, the Supreme Court has recognized, "It cannot be doubted that motion pictures are a significant medium for the communication of ideas.  They may affect public

attitudes and behavior in a variety of ways, ranging from direct espousal of a political or social doctrine to the subtle shaping of thought which characterizes all artistic expression.  The importance of motion pictures as an organ of public opinion is not lessened by the fact that they are designed to entertain as well as to inform…. [E]xpression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments" *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (footnote omitted), 502 (1952).  With respect to owners and operators of movie theatres, the Supreme Court has recognized that they are "often those with the highest interest and the largest stake in a First Amendment controversy." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 505 n.11 (1981).

55.      Defendants' orders challenged herein are a categorical prohibition of Plaintiffs' rights to free speech and free expression protected by the First Amendment.  The orders are a prior restraint on speech and expression, which constitute "the essence of censorship."  *Near v. Minnesota*, 283 U.S. 697, 713 (1931), and "the most serious and the least tolerable infringement on First Amendment rights."  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 51, 57 (1965).  "The administration of a censorship system for motion pictures presents peculiar dangers to constitutionally protected speech."  *Freedman v. Maryland*, 380 U.S. 51, 57 (1965).  Defendants' orders have prevented, and continue to prevent, the exhibition to the public of films of significant artistic, cultural, political and popular merit.  In addition, Defendants' orders, which allow, for example, places of worship to reopen while forbidding movie theatres from reopening, constitute an overt governmental preference for one protected message over other protected messages.  In fact, Defendants' orders, for example, allowing shopping malls to reopen, while requiring movie theatres to remain closed, demonstrates a preference for unprotected activities over protected speech.

4816-5471-1489v.3 0115974-000002

56.     This violation of the First Amendment to the United States Constitution has

caused proximate and legal harm to AMC, Cinemark, Regal, BJK, Bow Tie, Community

Theaters, and NATO NJ and NATO, and their members.

57.     Plaintiffs seek a declaration that the orders violate the First Amendment to the

United States Constitution.

58.     AMC, Cinemark, and Regal, and NATO NJ and NATO, both directly and on

behalf of their respective members, have no adequate remedy at law and will suffer serious and

irreparable harm unless Defendants are enjoined from implementing the orders, to the extent they

allow require movie theatres to remain closed and not exhibit films after comparable places of

public assembly have been allowed to reopen.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### THIRD CLAIM FOR RELIEF

### (Violation of the Due Process Clause of the Fourteenth Amendment)

59.     Plaintiffs incorporates by reference and reallege each and every allegation in

Paragraphs 1 through 58, as if fully set forth herein.

60.     The Due Process Clause of the Fourteenth Amendment provides that "[n]o State

shall . . . deprive any person of life, liberty, or property, without due process of law."  A State

violates this guarantee of due process by depriving one of property under a law "so vague that it

fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it

invites arbitrary enforcement."  *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

61.     Defendants' orders, which distinguish between places of worship or other

comparable entities and movie theatres, are standardless and invite arbitrary enforcement.  There

is no rational basis to distinguish between these similarly situated venues, and Defendants have

offered no explanation for this distinction.  Any enforcement of the orders that prohibits movie

theatres from reopening, while allowing other similarly-situated places of public assembly, such as places of worship, to reopen, is an arbitrary violation of Plaintiffs' rights to due process.

62.     In addition, Defendants have violated the Due Process Clause in that their orders fail to provide any meaningful procedure for challenging the determination that similarly-situated entities and activities are subject to disparate treatment by the City and State. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982).

63.     Plaintiffs seek a declaration that the orders' arbitrary distinctions between places of worship and movie theatres violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

64.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm unless Defendants are enjoined from implementing and enforcing the orders, to the extent they allow places of worship or other comparable entities to open before movie theatres.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CLAIM FOR RELIEF

### (Violation of the Takings Clause of the Fifth Amendment)

65.     Plaintiffs incorporate by reference and reallege each and every allegation in Paragraphs 1 through 64, as if fully set forth herein.

66.     The Takings Clause of the Fifth Amendment states, "nor shall private property be taken for public use, without just compensation."

67.     The actions taken by Defendants have resulted in AMC, Cinemark, Regal, BJK, Bow Tie, and Community Theaters, and NATO NJ's and NATO's members being deprived of the economically beneficial and productive use of their property, resulting in the involuntary closing of their businesses.

68.     Defendants' orders constitute regulatory takings of Plaintiffs' (including NATO NJ and NATO's members') property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.  At a minimum, the effect of Defendants' orders constitutes a "partial" taking as recognized in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978).  This violation of the Takings Clause has caused proximate and legal harm to Plaintiffs.

69.     Accordingly, Plaintiffs seek a declaration that the orders violate the Takings Clause of the Fifth Amendment to the United States Constitution and that Plaintiffs (including NATO NJ and NATO's members) are entitled to compensation for its economic loss as a result of the taking.

70.     AMC, Cinemark, Regal, BJK, Bow Tie, and Community Theaters, and NATO NJ's and NATO's members have no adequate remedy at law and will suffer serious and irreparable harm unless Defendants are enjoined from implementing and enforcing the orders, to the extent they allow places of worship and other comparable entities to open before movie theatres.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### FIFTH CLAIM FOR RELIEF

### (Violation of New Jersey Constitution, Art. I, ¶ 1)

71.     Plaintiffs incorporate by reference and reallege each and every allegation in Paragraphs 1 through 70, as if fully set forth herein.

72.     Article 1, paragraph 1 of the New Jersey Constitution provides:  "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."  "Nowhere in that paragraph do

the phrases 'equal protection' or 'due process' appear.  Nonetheless, article 1, paragraph 1, like the fourteenth amendment, seeks to protect against injustice and against the unequal treatment of those who should be treated alike.  To this extent, article 1 safeguards values like those encompassed by the principles of due process and equal protection." *Greenberg v. Kimmelman*, 99 N.J. 552, 568 (1985).

73.     Prohibiting Plaintiffs (including NATO NJ and NATO's members) from reopening while allowing similarly-situated places of public assembly to do so, and without recourse or protection from arbitrary enforcement of Defendants' orders, unconstitutionally deprives Plaintiffs (including NATO NJ and NATO's members) of their rights under the New Jersey Constitution.

74.     Plaintiffs seek a declaration that the orders violate Article I, paragraph 1 of the New Jersey Constitution.

75.     Plaintiffs (including NATO NJ and NATO's members) have no adequate remedy at law and will suffer serious and irreparable harm unless Defendants are enjoined from implementing and enforcing the orders.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## <u>SIXTH CLAIM FOR RELIEF</u>

### <u>(Violation of New Jersey Constitution, Art. I, ¶ 20)</u>

76.     Plaintiffs incorporate by reference and reallege each and every allegation in Paragraphs 1 through 75, as if fully set forth herein.

77.     Article 1, paragraph 20 of the New Jersey Constitution provides, in relevant part:

> Private property shall not be taken for public use without just
> compensation.  Individuals or private corporations shall not be
> authorized to take private property for public use without just
> compensation first made to the owners.

25

78.     Plaintiffs (including NATO NJ and NATO's members) have property interests in their movie theatre facilities.  Prohibiting them from reopening while allowing similarly situated entities to do so, and without recourse or protection from arbitrary enforcement of Defendants' orders, constitutes a taking of Plaintiffs (including NATO NJ and NATO's members') property under the New Jersey Constitution.

79.     Plaintiffs seek a declaration that the orders violate Article I, paragraph 20 of the New Jersey Constitution and that Plaintiffs (including NATO NJ and NATO's members) are entitled to compensation for their economic loss as a result of Defendants' taking.

80.     Plaintiffs (including NATO NJ and NATO's members) have no adequate remedy at law and will suffer serious and irreparable harm unless Defendants are enjoined from implementing and enforcing the orders.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs NATO NJ, NATO, AMC, Cinemark, Regal, BJK, Bow Tie, and Community Theaters pray for relief as follows:

1.     For a declaration that Defendants' orders, which establish disparate treatment of similarly situated entities, constitute violations of Plaintiffs' (including NATO NJ and NATO's Plaintiffs' members') rights under the United States and New Jersey Constitutions to equal protection and due process, and constitutes an unlawful taking without just compensation;

2.     For an order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing the orders to the extent that they prohibit movie theatres from opening simultaneously with other entities comparable to movie theatres;

3.     For a declaration that AMC, Cinemark, Regal, BJK, Bow Tie, Community Theaters, and NATO NJ's and NATO's members should be treated in the same manner as

26

comparable entities under Defendants' orders, and permitted to reopen as other comparable places of public assembly have been allowed;

4.      For a declaration that Defendants' actions violate the First Amendment rights of freedom of speech and expression of AMC, Cinemark, Regal, BJK, Bow Tie, and Community Theaters, and NATO NJ's and NATO's members;

5.      For a declaration that Defendants' actions constitute a deprivation of just compensation due to the economic loss they have imposed upon AMC, Cinemark, Regal, BJK, Bow Tie, and Community Theaters, and NATO NJ's and NATO's members;

6.      For reasonable attorneys' fees and costs in the prosecution of this action pursuant to law, including 42 U.S.C. § 1988 and New Jersey Statutes, Title 10 § 6-2; and

7.      For such other and further relief as the Court deems just and equitable.

Dated:  New York, New York
        July 6, 2020.

                             Respectfully Submitted,

                             DAVIS WRIGHT TREMAINE LLP

                             By: */s/ Geoffrey S. Brounell*
                             Geoffrey S. Brounell (member of the District of
                             New Jersey bar)
                             Robert Corn-Revere (*pro hac vice* application
                             forthcoming)
                             Janet Grumer (*pro hac vice* application
                             forthcoming)
                             Martin L. Fineman (*pro hac vice* application
                             forthcoming)
                             John D. Freed (*pro hac vice* application
                               forthcoming)

4816-5471-1489v.3 0115974-000002

1251 Avenue of the Americas, 21st floor
New York, New York 10020
Tel:  (212) 489-8230
geoffreybrounell@dwt.com
bobcornrevere@dwt.com
janetgrumer@dwt.com
martinfineman@dwt.com
jakefreed@dwt.com

Attorneys for Plaintiffs
National Association of Theatre Owners,
National Association of Theatre Owners of New
Jersey, American Multi-Cinema, Inc., Cinemark
USA, Inc., Regal Cinemas, Inc., BJK Entertainment
Inc., Bow Tie Cinemas, LLC, and Community
Theaters LLC

28